UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY GARDNER,

        Plaintiff,                     Hon. Ellen S. Carmody

v.                                         Case No. 1:05-CV-777

MINDY SIMON,

        Defendant.
_____/

## OPINION

This matter is before the Court on <u>Defendant's Motion for Summary Judgment</u>. (Dkt. 41). On December 27, 2005, the parties consented to proceed in this Court for all further proceedings, including trial and an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Richard Alan Enslen referred this case to the undersigned. (Dkt. #28). For the reasons articulated below, Defendant's motion is **denied**.

### BACKGROUND

On September 3, 2004, Plaintiff was seriously injured while riding "Nick," a horse owned by Defendant. (Dkt. #1). On July 12, 2005, Plaintiff initiated the present action, asserting that Defendant "breached her duty of care owing to Plaintiff. . .and was negligent in failing to warn him about the dangerous and viscous propensities of the horse, "Nick," and of the fact that "Nick" had previously thrown 3 other riders." Plaintiff alleges that he has suffered damages in excess of $75,000. *Id.* On May 26, 2006, Defendant filed the present motion seeking summary judgment.

## SUMMARY JUDGMENT STANDARD

In reviewing a motion for summary judgment, the Court must confine itself to the narrow questions of whether there exist "no genuine issue[s] as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a Rule 56 motion, the Court cannot try issues of fact, but is empowered to determine only whether there exist issues in dispute to be decided in a trial on the merits. *See Perez v. Aetna Insurance Co.*, 96 F.3d 813, 819 (6th Cir. 1996); *Aiken v. The City of Memphis*, 37 F.3d 1155, 1161 (6th Cir. 1994). The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see also*, *Terry Barr Sales Agency v. All-Lock Co. Inc.*, 96 F.3d 813, 819 (6th Cir. 1996) (citing *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989)).

A motion for summary judgment requires the Court to view "inferences to be drawn from the underlying facts...in the light most favorable to the party opposing the motion." *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also*, *Terry Barr Sales Agency*, 96 F.3d at 819; *Schaffer v. A.O. Smith Harvestore Products, Inc.*, 74 F.3d 722, 727 (6th Cir. 1996). The opponent, however, has the burden to show that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.'" *Historic Preservation Guild of Bay View v. Burnley*, 896 F.2d 985, 993 (6th Cir. 1989) (quoting *Matsushita Electric Ind. Co.*, 475 U.S. at 587); *see also*, *Schaffer*, 74 F.3d at 727.

As the Sixth Circuit has recognized, the Supreme Court has encouraged the granting of summary judgments, as such may be "an appropriate avenue for the 'just, speedy and inexpensive determination' of a matter." *Kutrom v. City of Center Line*, 979 F.2d 1171, 1173 (6th Cir. 1992).

Consistent with this concern for judicial economy, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient." *Anderson*, 477 U.S. at 252; *see also Bailey v. Floyd Board of Education*, 106 F.3d 135, 140 (6th Cir. 1997). Furthermore, mere allegations do not suffice. *See Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989) ("the party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact").

## ANALYSIS

The Court has jurisdiction over the subject matter of the present dispute pursuant to diversity jurisdiction. *See* 28 U.S.C. § 1332. When presiding over a diversity action, federal courts must apply the substantive law of the state in which the court sits, including that state's choice of law rules. *See Mill's Pride, Inc. v. Continental Ins. Co.*, 300 F.3d 701, 704 (6th Cir. 2002).

In tort cases where the laws of more than one state may be implicated, Michigan courts employ an "interest analysis" to determine which state's law governs. *See Hall v. General Motors Corp.*, 582 N.W.2d 866, 868 (Mich. Ct. App. 1998) (quoting *Sutherland v. Kennington Truck Service, Ltd.*, 562 N.W.2d 466 (Mich. 1997)). Pursuant to this analysis, the Court must apply Michigan law unless there exists a "rational reason" to do otherwise. To determine whether such a "rational reason" exists, the Court must undertake a two-step analysis. The Court must first determine whether another state possesses any interest in having its law applied in the matter. If no state possesses such an interest, the presumption that Michigan law applies cannot be overcome. If another state does possess an interest in having its law applied, the Court must determine whether "Michigan's interests mandate that

Michigan law be applied despite the foreign interests." *Hall*, 582 N.W.2d at 868 (quoting *Sutherland*, 562 N.W.2d 466).

Applying this analysis, the Court concludes that Michigan law must be applied in this matter. The allegedly tortious activity giving rise to the present action occurred in Michigan. The Michigan legislature has also enacted legislation, the Equine Activity Liability Act, which is directly applicable in this matter. Furthermore, the only connection which the state of Florida has to this case is that Plaintiff is a Florida resident. It is well established, however, that "the plaintiff's residence, with nothing more, is insufficient to support the choice of a state's law." *Sutherland*, 562 N.W.2d at 472 (citing *Home Ins. Co. v. Dick*, 281 U.S. 397, 408 (1930)); *see also*, *Charash v. Oberlin College*, 14 F.3d 291, 298-99 (6th Cir. 1994) (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313 (1981)) ("[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair"). Accordingly, the Court concludes that the substantive law of the State of Michigan must be applied in this matter.

Defendant asserts that Plaintiff's claims are barred by the Michigan Equine Activity Liability Act (EALA). *See* Mich. Comp. Laws § 691.1661, *et seq.* Specifically, Defendant relies on section 3 of the EALA which provides as follows:

> Except as otherwise provided in section 5, an equine activity sponsor, an equine professional, or another person is not liable for an injury to or the death of a participant or property damage resulting from an inherent risk of an equine activity. Except as otherwise provided in section 5, a participant or participant's representative shall not make a claim for, or recover, civil damages from an equine activity sponsor, an equine professional, or another person for injury to or the death of the participant or property damage resulting from an inherent risk of an equine activity.

Mich. Comp. Laws § 691.1663.

Defendant asserts that she is entitled to summary judgment because Plaintiff's injuries resulted "from an inherent risk of an equine activity," which the EALA defines as:

> a danger or condition that is an integral part of an equine activity, including, but not limited to, any of the following:
>
> (i)   An equine's propensity to behave in ways that may result in injury, harm, or death to a person on or around it.
>
> (ii)  The unpredictability of an equine's reaction to things such as sounds, sudden movement, and people, other animals, or unfamiliar objects.
>
> (iii) A hazard such as a surface or subsurface condition.
>
> (iv)  Colliding with another equine or object.

Mich. Comp. Laws § 691.1662(f).

As the Michigan Court of Appeals has held, the definition of "inherent risk" encompasses more than simply "normal and anticipated equine behavior." *Amburgey v. Sauder*, 605 N.W.2d 84, 89 (Mich. Ct. App. 1999). As the court stated:

> It is clear that the risks immunized by the EALA include more than those flowing from an equine's normal or anticipated behavior. Thus, whether [the horse] was acting normally when plaintiff was injured is not determinative of whether the risk leading to plaintiff's injury is included within the scope of the EALA. The statute recognizes that an equine may behave in a way that will result in injury and that equines may have unpredictable reactions to diverse circumstances - precisely one of the guiding motivations for limiting the liability of equine professionals.

*Id.*

Plaintiff testified that after being mounted, Nick "got a little antsy" and started to "raise up on the front end a little bit." (Gardner Deposition at 47). At this point, Plaintiff, an experienced rider, began turning Nick in "tight circles" to "get him settled down." *Id.* After turning two such circles, Nick "bumped his head" on a tree. *Id.* at 48-50. Nick then reared up and caught one of his front hoofs

in the tree, at which point he "went over backwards" falling on Plaintiff, causing the injuries which give rise to the present action. *Id.* at 48-54. Based on the facts thus far presented, the Court finds that Plaintiff's injuries resulted from "an inherent risk of an equine activity," as that phrase is defined under Michigan law.

Plaintiff counters that Defendant cannot look to the EALA (and section 3 in particular) for protection because she is neither an equine professional nor an equine activity sponsor. This argument ignores the fact that section 3 of the EALA expressly applies to equine activity sponsors, equine professionals, as well as "another person." As Defendant clearly fits within the definition of "another person" she may properly invoke section 3 of the EALA. Moreover, Plaintiff is properly characterized as an equine participant as that term is defined in the EALA. *See* Mich. Comp. Laws § 691.1662. In sum, Defendant's reliance on section 3 of the EALA is, in light of the facts thus far presented, appropriate.

As the language quoted above reveals, however, the bar to liability articulated in section 3 of the EALA is subject to the provisions of "section 5" (Mich. Comp. Laws § 691.1665). Section 5 provides (in pertinent part) as follows:

> Section 3 does not prevent or limit the liability of an equine activity sponsor, equine professional, or another person if the equine activity sponsor, equine professional, or other person does any of the following:
>
> (d)   Commits a negligent act or omission that constitutes a proximate cause of the injury, death, or damage.

Mich. Comp. Laws § 691.1665.

As noted above, Plaintiff asserts that Defendant "was negligent in failing to warn [Plaintiff] about [Nick's] dangerous and viscous propensities." To establish a negligence claim under Michigan law, Plaintiff must establish the following elements: (1) Defendant owed him a duty; (2)

-6-

Defendant breached that duty; (3) Defendant's breach was the proximate cause of his injuries; and (4) he suffered damages as a result of his injuries.  *See Brown v. Brown*, 716 N.W.2d 626, 629 (Mich. Ct. App. 2006) (citation omitted); *Henschel v. United Artists Theatre Circuit, Inc.*, 2006 WL 1113329 at *3 (Mich. Ct. App., Apr. 27, 2006) (citation omitted); *Moning v. Alfono*, 254 N.W.2d 759, 764 (Mich. 1977).

Whether Defendant owed a duty to Plaintiff is a legal question for the Court to determine. *See Brown*, 716 N.W.2d at 629 (citing *Murdock v. Higgins*, 559 N.W.2d 639 (Mich. 1997)).  As the Michigan Court of Appeals has stated:

> In determining whether a duty exists in a negligence action involving domestic animals, trial courts must consider "the normal characteristics of the animal that caused the injury, as well as any abnormally dangerous characteristics of which the defendant has knowledge.  Thus, if the possessor of such an animal, including one in temporary possession, has knowledge of some dangerous propensity unique to the particular animal, or is aware that the animal is in such a situation that a danger of foreseeable harm might arise, the possessor has a legally recognized duty to control the animal to an extent reasonable to guard against the foreseeable danger.

*Mounts v. Van Beeste*, 2004 N.W.2d 1737676 at *1 (Mich. Ct. App., Aug. 3, 2004) (quoting *Trager v. Thor*, 516 N.W.2d 69 (Mich 1994)).

In the Court's estimation, Plaintiff has submitted facts which, if viewed in a light most favorable to him, could entitle him to relief in this matter.  Alisha Simon testified that as of the date of Plaintiff's accident, Nick was "green broke."  (Simon Deposition at 18).  According to Simon, a "green broke" horse is "rideable," but still requires further training.  *Id.* at 19.  Simon testified that prior to Plaintiff's accident, she had "come off" Nick "three or four" times. (Simon Deposition at 9, 21-22).  She further testified that one or two of these incidents were the result of Nick "rear[ing] up." *Id.* at 10.

Malissa Goalen testified that she "came off" Nick twice in one day as a result of Nick's refusal to "go over" a log. (Goalen deposition at 14-15). These incidents occurred prior to Plaintiff's accident. *Id.* at 18. Glenda Gardner testified regarding her attempt to ride Nick. She testified that after walking Nick a short distance "he got spooked" and "reared up," causing her to fall off. (Gardner Deposition at 10). When Gardner indicated that she was not going to attempt to ride Nick any further, Defendant allegedly responded, "quit being a baby and get back on him." Gardner remounted Nick, who promptly "spun around" causing Gardner to again fall off. *Id.* According to Gardner, this incident occurred prior to Plaintiff's accident. *Id.* at 16.

Plaintiff testified that Defendant was aware of these incidents involving Nick. (Gardner Deposition at 56-57). Plaintiff further testified, however, that he was not informed (by anybody) of these incidents until after his accident. *Id.* at 57. Furthermore, according to Plaintiff, on the day of the incident in question Defendant suggested that he ride Nick. *Id.* at 43.

The facts submitted thus far, when viewed in a light most favorable to Plaintiff, establish that Defendant owed a duty to Plaintiff. As for the remaining elements of Plaintiff's negligence claim, the Court likewise finds that Plaintiff has submitted evidence which, when viewed in a light most favorable to Plaintiff, could entitle him to relief. The Court recognizes that Defendant has submitted evidence which, if believed, could result in a denial of relief to Plaintiff. Such simply underscores, however, that there presently exist legitimate factual disputes precluding the granting of summary judgment. This conclusion is consistent with Michigan law, which provides that the issue of negligence is best resolved by the finder of fact. *See Petrolia Corp. v. Elam*, 1992 WL 31299 at *2 (6th Cir., Feb. 20, 1992) (quoting *Moning*, 254 N.W.2d at 763) ("the preference for jury resolution of the issue of negligence. . .is rooted in the belief that the jury's judgment of what is reasonable under the

circumstances of a particular case is more likely than the judicial judgment to represent the community's judgment of how reasonable persons would conduct themselves"). For example, whether Defendant acted reasonably by suggesting that Plaintiff ride Nick and not warning that Nick was only "green broke," in light of Plaintiff's extensive experience with horses, is clearly a question of fact for a jury.

## CONCLUSION

For the reasons articulated herein, Defendant's Motion for Summary Judgment, (dkt. 41), is **denied**. An Order consistent with this Opinion will enter.

Date: August 4, 2006            /s/ Ellen S. Carmody
                                ELLEN S. CARMODY
                                United States Magistrate Judge